# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **DEBRA A. POE,** | |
| Plaintiff, | Case No. 10 C 6811 |
| v. | Hon. Harry D. Leinenweber |
| **UNIVERSITY OF CHICAGO POLICE DEPARTMENT,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, an African-American female, was employed by the University of Chicago (the "University") Police Department (the "Department") as a police officer from 1987 to August 12, 2009 when she was fired. She claims that her termination was in violation of Title VII of the Civil Rights Act of 1964 because it was in retaliation for her having filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and a lawsuit against the University in 2004. Because the Plaintiff has failed to create a genuine issue of material fact that her termination was a result of retaliation under either by direct evidence or by the indirect burden shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-4 (1973) the Court grants Summary Judgement to the University.

# I. BACKGROUND

The following facts are taken from the parties' Local Rule 56 statements. In 2004 Plaintiff held the rank of Sergeant. In that year she filed a charge of discrimination with the EEOC in which she alleged that she had been harassed by a fellow Police Sergeant. She received a Notice of Right to Sue and subsequently filed a lawsuit against the University. The lawsuit was settled in 2006. At the time of her charge, the Department was led by Chief Rudolph E. Nimocks ("Nimocks") and Deputy Chief Lee D. Caldwell ("Caldwell").

About this same time, in 2003 or 2004, Plaintiff was assigned to be the Department's Training Sergeant, a position she held until her discharge in 2009. In the year 2009 Plaintiff was assigned a class of seven recruits to train. In February of that year the University hired Marlon C. Lynch ("Lynch"). He was given the title of Associate Vice President for Safety and Security. He was assigned the job of creating a new Department of Safety and Security which was to include the University Police Department. Shortly after Lynch was hired both Nimocks and Caldwell left the Department and Lynch assumed the title of Chief of Police.

In early June 2009, two female recruits, LaTonya Morgan ("Morgan") and Shalaine Enahora ("Enahora"), met with Lynch complaining that Plaintiff was harassing them by singling them

out for poor treatment because they were women, and generally treating them in an unfair and overly harsh manner. Three days later Lynch received an e-mail from Police Sergeant Gwen Jackson ("Jackson"), confirming their harassment complaints, which she described as "very blatant," and was causing Morgan and Enahora to have second thoughts about working for the University Police Department. Jackson further stated that this was not the first time that female recruits had made complaints about Plaintiff.

As a result of these complaints Lynch decided to institute an internal investigation, called a CR. Prior to its commencement, Lynch received an e-mail from Morgan stating that the two recruits no longer wished to pursue the matter as they wished "to leave well enough alone." After receiving the e-mail Lynch met with Morgan and Enahora. The parties dispute what occurred at this meeting. The University contends that Morgan and Enahora changed their minds and wished to make a formal complaint against Plaintiff. The Plaintiff contends that Lynch asked them to agree to the investigation which they did. In any event Lynch decided to go ahead with the CR and appointed Deputy Chief David Browne ("Browne") to conduct the investigation, which was to focus on three allegations drawn from Morgan's and Enahora's complaints: (1) that Plaintiff had made inappropriate and discriminatory remarks to Morgan and Enahora; (2) that Plaintiff had engaged in a pattern of harassment against them;

and (3) that Plaintiff acted in an unprofessional manner during recruit training.

Browne's investigation was carried out over a period of eighteen days, during which he interviewed Plaintiff, Sergeant Jackson, Moran, Enahora and the other five recruits who were enrolled in Plaintiff's training class.  He was assisted in the investigation by a University Human Resources representative, Tremaine Maebry ("Maebry").  The recruits disclosed that Plaintiff had during the training sessions stated that Nimock was "senile," "old and useless," "no longer capable of holding his job" and that "it was time for him to go."  They also said that Plaintiff had called Caldwell "an egomaniac that exaggerated his experiences in the military and held himself up as some sort of CIA operative" who "made up a lot of stuff."  They also said that Plaintiff had described two female officers as "useless" and that each had "got her position by lying oh her back" and had "slept their way into cake positions."  Also during the training session Plaintiff had threatened to have a physical fight with a former recruit who failed to complete the police academy phase of training, saying she would "slam-dunk" her.  Sgt. Jackson stated that when asked why she was so hard on recruits, Plaintiff responded "I don't give a fuck about those bitches."  It should be noted here that while Plaintiff denies making the comments attributed to her, she does not deny that the investigation

concluded that she had made them. The recruits also described the quality of the training given by Plaintiff as "deficient" and "too long, and of poor quality" and "disorganized."

Browne concluded from his investigation that the first and third allegations that she had made inappropriate and discriminatory remarks and had acted in an unprofessional manner during the training, were sustained, but that the second, that she had engaged in a pattern of harassment against Morgan and Enahora, had not been sustained because the evidence disclosed that she treated every recruit poorly, and had not singled out Morgan and Enahora for special abuse. Browne recommended that Plaintiff be suspended and demoted to the rank of police officer. Lynch, however, decided to terminate Plaintiff's employment and she was so informed in writing on August 12, 2009. While the termination letter was signed by Browne it was actually the decision of Lynch. The stated reasons for the termination were that Plaintiff had "repeatedly made disparaging comments and statements about [her] colleagues' abilities and competencies and [her] superiors' decision-making authority . . . [causing] friction and general malaise in the entire [recruit] training class." Further "[plaintiff's] actions have tarnished the image of this department, the authority of [her] superiors and [her] reputation as officer of this university."

Based on the foregoing, the University claims that Plaintiff cannot prove her allegation that she was terminated in retaliation for her 2004 EEOC charge and subsequent lawsuit against the University. The University contends that she cannot prove either by direct or indirect methods of proof.

## II. DISCUSSION

The direct method requires Plaintiff to prove three things: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) and that there is a causal connection between the protected activity and the adverse employment action. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). The University agrees that she has established the first two elements but denies that she has offered any admissible proof as to the causal connection. It contends that there is absolutely no evidence that Lynch, the decision maker, was aware of the 2004 EEOC charge and subsequent lawsuit which was the protected activity. Since Lynch was unaware of the charge and lawsuit, it could not have been the reason for terminating Plaintiff.

The only "evidence" that Plaintiff has brought forth in an attempt to prove a causal connection is contained in Paragraph 14 of her Additional Statement of Facts. Paragraph 14 states in its entirety:

> 14. In July 2009 Sergeant Poe learned that she had been removed from my [*sic*] role as training Sergeant because of the announcement from Chief Lynch.  The next day, officer Bowers [the head of the union representing the campus police] approached Sergeant Poe and discussed his meetings with Chief Lynch.  When she asked him about my [*sic*] removal from the training Sergeant position he told me [*sic*] that the new chief did not like people who filed lawsuits and kept their jobs.  He said that based on my [*sic*] prior history of filing a complaint that she wouldn't get any promotions and then stated that very soon certain supervisors were no longer going to be employed.

She cites as authority for this statement her own affidavit and the affidavit of a Lieutenant Homes.  Admissibility of this statement is the threshold question because a court may only consider admissible evidence in assessing a motion for summary judgment and inadmissable hearsay evidence cannot preclude summary judgment.  *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).  The University contends that this statement is hearsay on hearsay, *i.e.*, what Bowers said what Lynch said while both were out or court and not under oath.  Although it is probably not double hearsay {because what Bowers was referring to Lynch's state of mind, *Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th Cir. 2004)), what Bowers told Plaintiff about Lynch's state of mind is obviously inadmissable hearsay on its own.  An out-of-court statement, not made under oath as to another's state of mind is classical hearsay.  Therefore, since this is the only

"evidence" proffered to prove causation as to retaliation under the direct method, the effort fails. *Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009).

In order to prove retaliation under the indirect method of proof, Plaintiff must first establish a *prima facie* case before the burden shifts to the Defendant to offer one or more legitimate non retaliatory reasons for terminating her. Once the Defendant does so, the Plaintiff must show by competent admissible evidence that there is a genuine issue as to the reasons given for the decision to terminate is a pretext for discrimination. The burden of persuasion remains on Plaintiff to show the decision to terminate was retaliatory. *Rudin v. Land of Lincoln Community College*, 420 F.3d 712, 724 (7th Cir. 2005). In order to establish a *prima facie* case a plaintiff must present admissible evidence that she (1) engaged in a statutorily protected activity; (2) was performing her job satisfactorily; (3) experienced an adverse employment action, and (4) was treated less favorably than similarly situated employees who did not engage in a protected activity were treated. *Luckie v. Ameritech*, 389 F.3d 708, 714 (7th Cir. 2004).

The University, while conceding that Plaintiff has established elements one and three, takes dead aim at elements two and four. Lynch, the admitted decision maker, had received a slew of complaints concerning Plaintiff's actions as a training

officer.  He instituted an investigation that was conducted by two employees, one of whom was from the University's Human Resources Department.  All three of the charges were in effect substantiated.  The one charge not "sustained" was in itself damning, *viz.*, that Plaintiff had not singled out Morgan and Enahora for abuse, but had mistreated each of the recruits equally.  Thus, the University claims that it is clear that Plaintiff was not performing up to its reasonable expectations. Plaintiff's response contends that her misconduct was not so serious as to justify termination, and her conduct was no worse that than that of Lieutenant Homes who also disparaged Nimocks and Caldwell.

Plaintiff's response in unavailing.  The Court is not in a position to weigh the competence or the fairness of the University's decision to terminate Plaintiff simply because of a belief that the employer may have made an unfair or a poor choice.  A court may only interfere when the decision is unlawful, *i.e.*, based a prohibited factor, such as retaliation, or race, or sex, for example.  *Plasnik v. St. Joseph Hospital*, 464 F.3d 691, 697 (7th Cir. 2006).  Here the Plaintiff disparaged her supervisors before a class of new recruits.  It certainly was not her place to poison the views of new employees toward their superiors.  She also abused and abased the recruits causing some of them to want to drop out of the police force.  Her training

classes were not well run.  Lynch and the University were certainly within their rights to terminate Plaintiff based on the record compiled in the investigation.  While Plaintiff contends that the investigation was flawed and not carried out in full accord with its written policy, this does not help her prove that she was treated less favorably than other similarly situated training officers.  *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 920 (7th Cir. 2001).  Moreover the investigation was not carried out by Lynch but by his appointee, Browne.

Plaintiff also contends that what she said was no worse than what others had said about the Chief and the Assistant Chief.  Thus, she was treated less favorably that those others.  This is also unavailing because none of the other instances of disparagement she cites were under the same or similar circumstances.  Plaintiff was terminated for abusive, insulting and unprofessional behavior before a class of new recruits.  The so-called similar situated employees were alleged to have disparaged Nimocks and Caldwell in private conversations and not before a class of recruits.  Further, none of them were alleged to have abused recruits and improperly conducted a training class.  Thus, they were not similarly situated.  *Willaims v. Airborne Express, Inc.*, 521 F.3d 765, 768 (7th Cir. 2008).  Therefore, Plaintiff has failed to establish retaliation by the

indirect method as well.  Accordingly, the Motion of the Defendant for Summary Judgment is granted.

### III.  CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

Date: 5/15/2013